# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY, | ) CIVIL NO. 07-00097 JMS/BMK |
| | ) |
| | ) ORDER (1) DENYING PLAINTIFF'S |
| Plaintiff, | ) MOTION FOR PARTIAL |
| | ) SUMMARY JUDGMENT ON ITS |
| vs. | ) COMPLAINT; (2) DENYING |
| | ) DEFENDANTS' MOTION FOR |
| GEORGE HEIL; PATRICIA NAIYOKE, | ) PARTIAL SUMMARY JUDGMENT |
| | ) ON COUNTS I AND II OF |
| | ) PLAINTIFF'S COMPLAINT; AND |
| Defendants. | ) (3) GRANTING PLAINTIFF'S |
| _____ | ) MOTION FOR PARTIAL |
| | ) SUMMARY JUDGMENT ON |
| GEORGE HEIL and PATRICIA NAIYOKE, | ) DEFENDANTS' COUNTERCLAIMS |
| | ) |
| | ) |
| Counterclaim Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| ALLSTATE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| Counterclaim Defendant. | ) |
| | ) |
| _____ | ) |

**ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COMPLAINT; (2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I AND II OF PLAINTIFF'S COMPLAINT; AND (3) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS**

## I. INTRODUCTION

Plaintiff Allstate Insurance Company ("Allstate" or "Plaintiff") filed this action asking the court to determine whether an Allstate Boatowners Policy (the "Policy") issued to Defendants George Heil and Patricia Naiyoke (collectively, "Defendants") covers the loss of Defendants' boat, the PATTI TOO. Defendants have filed counterclaims alleging claims for bad faith and unfair and deceptive business practices. Currently before the court are (1) Plaintiff's Motion for Partial Summary Judgment on its Complaint, (2) Defendants' Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint; and (3) Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims. For the following reasons, the court DENIES Plaintiff's Motion for Partial Summary Judgment on its Complaint, DENIES Defendants' Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint, and GRANTS Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims.

2

## II. **BACKGROUND**

### A.    **Factual Background**

On the morning of November 5, 2006, the PATTI TOO was found in its slip at the Hawaii Yacht Club submerged under water.  Pl.'s Ex. A at 59-60.[1] This dispute centers on the rights and obligations of the parties under the Policy stemming from this loss.

### 1.    *The Policy*

At the time the PATTI TOO sank, Defendants had a Policy with Plaintiff covering the PATTI TOO for losses up to $56,000 for the boat, $5,600 for boat equipment, and $5,000 for personal effects.  Pl.'s Ex. D.  The Policy covers physical loss to the property, except as limited or excluded by the Policy. *Id*.  Relevant to this action, in "SECTION I –COVERAGE TT," under the heading "Losses We Do Not Cover," the Policy provides:

> We do not cover loss to the property described in Coverage TT resulting in any manner from:
>
> 1.    wear and tear; marring; scratching; gradual deterioration; inherent vice; rust; corrosion; mold; wet or dry rot.

---

[1]  Unless otherwise indicated, all references to exhibits refer to those filed in support or opposition to Plaintiff's Motion for Partial Summary Judgment on the Complaint.

2.      a latent or physical defect.  This exclusion applies
        only to the item having the latent or physical
        defect.

*Id.* at 4.

In addition, under "Section I Conditions," the Policy includes a

"Seaworthiness Warranty," which states:

3.      Seaworthiness Warranty
        You warrant that your watercraft will be kept in a safe
        and navigable condition whenever afloat and/or being
        operated.

*Id.* at 6.

## 2.      *Loss of the PATTI TOO*

The parties dispute what caused the PATTI TOO to sink.  When

Defendants' boat mechanic, Sherman Whitmire, found the PATTI TOO at the

bottom of its slip, he saw no apparent reason why it sank.  Pl.'s Ex. A at 60-61.

Plaintiff's marine surveyor, Dennis Smith, later inspected the PATTI TOO and

submitted a report on the cause and nature of the damage.  Defs.' Ex. A.  Smith's

report states:

The actual cause of the flooding and sinking of the PATTI
TOO is a failed PVC thru-hull opening just inches above the
water line at the port side transom.  Most of the fitting is
missing, and only the end of the nipple where the discharge
hose from the holding tank is fitted is available for inspection.
However, even that nipple is riddled with fractures, and it is

4

> easy to determine that age and exposure to ultra violet have long ago caused the fitting to start to deteriorate, and then crack until the fitting completely failed, and fell away from the hull opening.  Once the penetration in the transom was open, water would lap the side of the hull, enter the vessel, and cause it to go down until the cockpit scuppers were below waterline, and then considerable flooding would occur and sinking would not be long in coming. . . .  The failure of the PVC plastic thru-hull is an issue of normal wear and tear to what most surveyors consider a substandard component.

Defs.' Ex. A.  As further evidence that this hole caused the PATTI TOO to sink, Smith notes that the PATTI TOO stayed afloat after this hole was plugged.  Smith Decl. ¶ 7.  Smith further notes that the PATTI TOO was unseaworthy because the thru-hull fitting was not a proper material, and should have been bronze or another appropriate metal.  Smith Decl. ¶ 6.[2]

---

[2]  In their Motion for Summary Judgment on Plaintiff's Complaint, Defendants argue that Smith's report and statements fail to satisfy the requirements of Fed. R. Evid. 702.  In its response, Plaintiff argues that the opinions of Defendants' experts -- Anderson and Scelsa -- are similarly inadmissible.  Because the parties have not briefed the Rule 702 issue in anything more than a cursory way as part of their summary judgment arguments, the court declines to resolve the expert admissibility issues on the record before it.  *See Cortes-Irizarry v. Corporacion Insular De Seguros*, 111 F.3d 184, 188 (1st Cir. 1997) ("We conclude, therefore, that at the junction where *Daubert* intersects with summary judgment practice, *Daubert* is accessible, but courts must be cautious - except when defects are obvious on the face of a proffer - not to exclude debatable scientific evidence without affording the proponent of the evidence adequate opportunity to defend its admissibility."); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3d Cir. 1994) ("Given the 'liberal thrust' of the federal rules it is particularly important that the side trying to defend the admissibility of evidence be given an adequate chance to do so.") (internal citation omitted); Reference Manual on Scientific Evid., 54-56 (2d ed. 2000) (noting that a summary judgment motion may be combined with a Fed. R. Evid. 104(a) motion in limine).  Given the limited evidence and argument presented, at this time the court sees no basis to exclude the expert testimony.

Defendants contest Smith's findings, and provide their own evidence that other reasons may have caused the PATTI TOO to sink.  Marine surveyor Bud Scelsa opined that the thru-hull fitting did not cause the PATTI TOO to sink, as water entering through such hole would take weeks to induce sinking.  Scelsa Aff. ¶¶ 11-18.  Moreover, Defendants' expert, Robert Anderson, disagreed with Smith's finding that the PVC fitting failed due to "age and exposure to ultra violet," because sunlight could not have reached the remainder of the fitting.  Anderson Decl. ¶ 5.  Anderson asserts that "a latent defect and/or catastrophic shock are the likely causes of the fracturing present in the remainder of the PVC fitting."  *Id.* ¶ 7.  Anderson also noted that "use of PVC is well accepted by the boating community and the PVC fitting I examined was a proper material for the installation it was used in."  *Id.* ¶ 8.

Prior to the loss, Defendants' mechanic, Sherman Whitmire, regularly inspect the PATTI TOO.  Every month, Whitmire performed a "hands-on:" "I not only had to look, I had to touch.  In essence, a water hose if it - even if it looked dry, she wanted me to reach out and jiggle it to make sure.  The lady was just overcome with fear about those sorts of things.  Monthly."  Defs.' Mot. Partial Summ. J. on Pl.'s Compl. Ex. J at 14.  This inspection was "basically to check the integrity of the boat."  *Id.* at 15.

Despite this regular inspection, Defendants were aware of some recommended repairs.  Specifically, in April 2004, Scelsa inspected the PATTI TOO and recommended, among other things, the following:

| | |
|---|---|
| *4 ABYC P-1 Table I | Replace the PVC pipe used in the assembly of the Port engine exhaust hosing with approved materials. Approved materials are: USCG approved exhaust hose, stainless steel pipe, FRP pipe, Galvanized pipe, monel pipe, bronze pipe. |

Defs.' Ex. D.  The report further notes that "attention to asterisked items is needed for complete operational insurance coverage on intended routes and services." *Id.* Neither party, however, argues that the PVC pipe in the assembly of the port engine contributed to the loss of the PATTI TOO.

**B.    Procedural History**

Allstate filed its Complaint on February 26, 2007 asking this court to (1) adjudge and determine the respective rights and responsibilities of the parties regarding liability and coverage for the damage incurred on the PATTI TOO; (2) declare that there is no coverage available under the Policy to Defendants for the subject loss; (3) declare that Plaintiff has no duty to make any payments to Defendants for the subject loss; (4) in the event the court finds coverage, find that coverage is limited to the Policy limits and other relevant limits of the Policy, and (5) award reasonable attorney's fees and costs of this suit to Plaintiff.  On April

17, 2007, Defendants answered the Complaint and filed counterclaims, including

(1) bad faith, (2) violation of Hawaii Revised Statutes ("HRS") § 480-2, and (3)

treble damages pursuant to HRS § 480-13.

Allstate filed a Motion for Partial Summary Judgment on Defendants'

Counterclaims on September 18, 2007 and a Motion for Partial Summary

Judgment on its Complaint that the PATTI TOO was unseaworthy on September

27, 2007.  On October 3, 2007, Defendants filed a Motion for Summary Judgment

on Counts I and II of Plaintiff's Complaint.  The parties filed oppositions to each

of the summary judgment motions on November 8, 2007 and replies on November

15, 2007.  A hearing was held on November 26, 2007.  For the reasons stated

herein, the court DENIES Plaintiff's Motion for Partial Summary Judgment on its

Complaint, DENIES Defendants' Motion for Summary Judgment on Counts I and

II of Plaintiff's Complaint, and GRANTS Plaintiff's Motion for Partial Summary

Judgment on Defendants' Counterclaims.

### III.  <u>STANDARD OF REVIEW</u>

Summary judgment is proper where there is no genuine issue of

material fact and the moving party is entitled to judgment as a matter of law.  Fed.

R. Civ. P. 56(c).  Rule 56(c) mandates summary judgment "against a party who

fails to make a showing sufficient to establish the existence of an element essential

to the party's case, and on which that party will bear the burden of proof at trial." *Celotex v. Catrett*, 477 U.S. 316, 321 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 321 (internal quotations omitted).

The burden initially lies with the moving party to show that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The moving party may discharge its burden by showing that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. "When the moving party has carried its burden under Rule 56(c) its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [and] come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation signals omitted).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual

dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

## IV. <u>DISCUSSION</u>

### A.    Warranty of Seaworthiness

Plaintiff argues that the PATTI TOO's sinking is not covered under the Policy as a matter of law because Defendants violated the Policy's Seaworthiness Warranty in the following ways: (1) by sinking in its slip, there is a presumption that the PATTI TOO is unseaworthy which Defendants have not rebutted, and (2) Defendants did not keep the boat in seaworthy condition because it used PVC pipe in the engine exhaust. Defendants argue that summary judgment should be granted in their favor because: (1) they have rebutted the presumption of unseaworthiness, and (2) use of PVC pipe in the engine exhaust did not render the PATTI TOO unseaworthy, and did not cause the PATTI TOO to sink. These questions present mixed questions of law and fact. The court therefore first interprets the Seaworthiness Warranty, determines its applicability to the facts of this case, and finds that fact issues remain.

### 1.    *Interpretation of Seaworthiness Warranty*

Under Hawaii law,[3] courts must look to the language of the insurance policy to determine the scope of the insurer's duties.  *See Sentinel Ins. Co. v. First Ins. Co. of Haw.*, 76 Haw. 277, 287, 875 P.2d 894, 904 (1994); *see also Hawaiian Ins. & Guar. Co. v. Fin. Sec. Ins. Co.*, 72 Haw. 80, 87, 807 P.2d 1256, 1260 (1991) ("In the context of insurance coverage disputes, we must look to the language of the insurance policies themselves to ascertain whether coverage exists, consistent with the insurer and insured's intent and expectations.").  The Hawaii Supreme Court has offered the following rules for interpreting provisions of insurance policies:

> [I]nsurance policies are subject to the general rules of contract construction; the terms of the policy should be interpreted according to their plain, ordinary, and accepted sense in common speech unless it appears from the policy that a different meaning is intended.  Moreover, every insurance

---

[3]  The parties make no argument whether state or federal law governs interpretation of the Policy.  Pursuant to *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 314 (1955), the regulation of marine insurance is left to the states unless there exists a "judicially established federal admiralty rule governing" the question.  *See also Yu v. Albany Ins. Co.*, 281 F.3d 803, 806 (9th Cir. 2002) ("Disputes arising under marine insurance contracts are governed by state law, in this case Hawaii law, unless an established federal rule addresses the issues raised, or there is a need for uniformity in admiralty practice.").  Because there appears to be no applicable federal admiralty rule, the court applies Hawaii state law.  *See Commercial Union Ins. Co. v. Pesante*, 359 F. Supp. 2d 81, 82-83 (D.R.I. 2005), *rev'd on other grounds by* 459 F.3d 34 (1st Cir. 2006) (finding no current admiralty rule that "failure to literally comply with an express warranty in a marine insurance contract voids the contract even if the breach is not material to the loss").

> contract shall be construed according to the entirety of its terms and conditions as set forth in the policy.
>
> Nevertheless, adherence to the plain language and literal meaning of the insurance contract provisions is not without limitation. We have acknowledged that because insurance policies are contracts of adhesion and are premised on standard forms prepared by the insurer's attorneys, we have long subscribed to the principle that they must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.

*Dairy Rd. Partners v. Island Ins. Co., Ltd.*, 92 Haw. 398, 411-12, 992 P.2d 93, 106-07 (2000) (internal citations, quotation marks, brackets, and ellipses omitted); *Hawaiian Ins. & Guar. Co.*, 72 Haw. at 87-88, 807 P.2d at 1260 ("[W]e shall construe insurance policies according to their plain, ordinary, and accepted sense in common speech unless it appears that a different meaning was intended. Moreover, this court has stated that it is committed to enforce 'the objectively reasonable expectations' of parties claiming coverage under insurance contracts which are 'construed in accord with the reasonable expectations of a layperson.'" (citations omitted)); *see also Burlington Ins. Co. v. Oceanic Design & Constr., Inc.*, 383 F.3d 940, 945 (9th Cir. 2004) ("In Hawaii, the terms of an insurance policy are to be interpreted according to their plain, ordinary, and accepted sense in common speech.").

12

When reviewing an insurance contract, a court applying Hawaii law "should look no further than the four corners of the document to determine whether an ambiguity exists." *State Farm Fire & Cas. Co. v. Pac. Rent-All, Inc.*, 90 Haw. 315, 324, 978 P.2d 753, 762 (1999).  A contract term is ambiguous only if it is capable of being reasonably understood in more than one way. *Cho Mark Oriental Food, Ltd. v. K & K Int'l*, 73 Haw. 509, 520, 836 P.2d 1057, 1063-64 (1992).  "[T]he parties' disagreement as to the meaning of a contract or its terms does not render clear language ambiguous." *Pac. Rent-All*, 90 Haw. at 324, 978 P.2d at 762.

Here, the parties do not argue in their motions that the Seaworthiness Warranty is ambiguous, so the court gives this provision its plain meaning.  The Seaworthiness Warranty is contained as number "3" under "Section 1 Conditions" of the Policy and states:

> 3.   Seaworthiness Warranty
> You warrant that your watercraft will be kept in a safe and navigable condition whenever afloat and/or being operated.

According to its plain terms, the Seaworthiness Warranty requires that Defendants keep the PATTI TOO in a safe and navigable condition while afloat and/or

during use.[4]

## 2.   *Effect of Compliance with Seaworthiness Warranty on Coverage*

"In marine insurance, there is historically no requirement that the breach of warranty relate to the loss, so that any breach bars recovery even though a loss would have happened had the warranty been carried out to the letter." *Yu v. Albany Ins. Co.*, 281 F.3d 803, 809 (9th Cir. 2002) (*quoting* 6 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 83:20 (3d ed. 1995)); *see also Commercial Union Ins. Co. v. Flagship Marine Servs.*, 190 F.3d 26, 31-32 (2d Cir. 1999) (noting that "under the federal rule and the law of most states, warranties in maritime insurance contracts must be strictly complied with, even if they are collateral to the primary risk that is the subject of the contract, if the insured is to recover").  This rule is in place in most states in "'recognition that it is peculiarly difficult for marine insurers to assess their risk, such that insurers must rely on . . . warranties made by insureds regarding their vessels' condition and usage.'" *Id.* (*quoting Commercial Union Ins. Co.*, 190 F.3d at 31-32).

---

[4] Courts have also recognized that "seaworthiness" generally means that the vessel is "reasonably fit for its intended purpose." *See, e.g., Gutierrez v. Waterman S.S. Corp.*, 373 U.S. 206, 213 (1963) (noting that under the seaworthiness doctrine, the ship must be reasonably fit for the purpose for which it is intended to be used); *Reliance Nat'l Ins. Co. v. Hanover*, 246 F. Supp. 2d 126, 136 (D. Mass. 2003).  This construction may expound upon the specific meaning of "safe and navigable condition," but for purposes of these Motions and given the plain words of the Policy, the court need not elaborate on these words at this time.

*Yu* applied these principles to determine that "Hawaii would adopt the rule that a marine insurer can avoid liability for breach of a captain warranty, regardless of whether that breach caused the loss." 281 F.3d at 809. Policy reasons counsel for strictly enforcing a captain's warranty, as such warranty (1) permits the insurer to control the amount of risk it assumes, (2) allows the insured to secure a reasonable premium, and (3) creates certainty in determining the obligations of the parties. *Id.* at 810.

The court finds the reasoning in *Yu* persuasive in determining that Plaintiff need only prove breach of the Seaworthiness Warranty to preempt Defendants' recovery under the Policy. Stated differently, Plaintiffs need not prove that such breach caused Defendants' loss of the PATTI TOO to deny coverage under the Policy. Like the captain's warranty in *Yu*, the Seaworthiness Warranty here makes clear both the amount of risk Plaintiff assumes in insuring Defendants and the obligations of each party when a loss occurs.[5]

---

[5] Although the warranty language in at least some other cases explicitly states that violation of the warranty will void the agreement, *see, e.g., Reliance Nat'l Ins. Co.*, 246 F. Supp. 2d at 131 ("It is warranted that the scheduled vessel is seaworthy at the inception of the insuring agreement. Violation of this warranty will void this insuring agreement from its inception."); *Yu*, 281 F.3d at 805 ("It is warranted by the Assured that Gregory P. Walker shall be aboard at all times the vessel is navigating. If Gregory P. Walker is not aboard the vessel while it is navigating, and if Underwriters have not previously agreed to a suitable replacement, coverage under this policy shall be suspended until Gregory P. Walker returns to the vessel"), such an explicit statement is not required. *See Aguirre v. Citizens Cas. Co.*, 441 F.2d 141, 143 (5th Cir.

(continued...)

Defendants's reliance on *Acadia v. Allied Marine Transp. LLC*, 151 F. Supp. 2d 107 (D. Me. 2001), for a rule requiring that the unseaworthy condition actually caused the loss is misplaced.  Unlike the Seaworthiness Warranty at issue here, the *Acadia* warranty limited coverage only where the unseaworthy condition caused the loss.  *See id.* at 117 (referring to clause stating that "[t]he underwriters shall not be liable for any loss, damage or expense arising out of the failure of Assured to exercise[] due diligence to maintain the vessel in seaworthy condition").  Indeed, other jurisdictions have concluded that breach of a seaworthiness warranty precludes recovery under an insurance policy, regardless of whether the breach caused the loss.  *See Thanh Long P'ship v. Highlands Ins. Co.*, 32 F.3d 189, 194 (5th Cir. 1994) ("Breach of the express warranty in this maritime insurance policy voids coverage under either Louisiana law or federal maritime precedent."); *Aguirre v. Citizens Cas. Co.*, 441 F.2d 141, 143 (5th Cir. 1971) ("If breach of the express warranty automatically suspended coverage under the policy, the question whether unseaworthiness proximately caused or

---

[5](...continued)
1971) (warranting "that at the inception of this policy the vessel shall be in a seaworthy condition and, thereafter, during the currency of this policy, the assured shall exercise due diligence to keep the vessel seaworthy, and in all respects fit, tight, and properly manned, equipped and supplied"). Even though the warranty clause at issue does not include this explicit language, the court finds that violation of the warranty voids coverage; the warranty was under the heading "Section 1 Conditions," meaning that compliance with this clause is a condition to coverage.

contributed to the grounding becomes irrelevant."); *see also Port Lynch, Inc. v. New England Int'l. Assurety of Am., Inc.*, 754 F. Supp. 816, 819 (W.D. Wash. 1991) (noting that "with respect to breaches of express warranties in a marine insurance contract, there is federal case law which calls for strict construction and renders policies void where such warranties are violated, even if there is no causal connection between the breach and the loss which has occurred" (*citing Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364 (11th Cir. 1988)); *New Hampshire Ins. Co. v. Dagnone*, 394 F. Supp. 2d 480, 486 (D.R.I. 2005) (noting that "under New York law, where a warranty in a marine insurance policy pertains to any risk of marine navigation, transit or transportation on seas or inland waters, the breach of such warranty precludes recovery under such policy" (citation and quotation signals omitted)).

Thus, if Defendants were in breach of the Seaworthiness Warranty, the Policy may not cover them for the loss of the PATTI TOO even if such breach did not cause the loss.

### 3.    *Fact Issues on Breach of Seaworthiness Warranty*

The parties raise three issues regarding the seaworthiness of the PATTI TOO: (1) whether the fact that the PATTI TOO sank in its slip means that it is was unseaworthy, (2) whether the fact that the thru-hull fitting was

17

disconnected rendered the PATTI TOO unseaworthy, and (3) whether the fact that the PATTI TOO had PVC parts in its engine rendered it unseaworthy. Each of these questions raise fact issues, making summary judgment inappropriate. *See Aguirre*, 441 F.2d at 144 ("Determining the seaworthiness of a vessel at a particular moment in time is the responsibility of the trier of fact." (citation and quotation signals omitted)).

On the first issue, both parties suggest that where a boat sinks in calm waters, a rebuttable presumption arises that it was unseaworthy at the time it sank. *See* Pl.'s Br. at 13; Defs.' Br. at 13; *see also Acadia*, 151 F. Supp. 2d at 124 (citing case law that presumption of unseaworthiness from boat sinking in calm seas can be rebutted by facts from which a fact-finder could conclude otherwise); *Pace v. Ins. Co. of N. Am.*, 838 F.2d 572, 577 (1st Cir. 1988) (noting that in the First Circuit, the "presumption of unseaworthiness created by a sinking in calm waters is overcome by proof that the vessel was, in fact, seaworthy. It may then be inferred that the sinking was due to some extraordinary, although unknown and unascertainable, peril of the sea." (citation and quotation signals omitted)); *Jefferson Marine Towing, Inc. v. Underwriters at Lloyd's, London,* 472 So.2d 146, 151 (5th Cir. 1985) (same); *Ins. Co. of N. Am. v. Lanasa Shrimp Co.,* 726 F.2d

688, 690 (11th Cir. 1984) (same).  Although this standard has yet to be applied in

Hawaii, it is instructive in highlighting the fact issues here.

Plaintiff argues that because the PATTI TOO sank in its slip, a

presumption of unseaworthiness arises.  Defendants, however, have submitted

evidence raising a fact question whether they can rebut this presumption.

Specifically, Defendants' mechanic, Whitmire, regularly inspected the PATTI

TOO "to check the integrity of the boat."  Defs.' Mot. Partial Summ. J. on Pl.'s

Compl. Ex. J at 14. at 15.  Every month, Whitmire performed a "hands-on:" "I not

only had to look, I had to touch.  In essence, a water hose if it - even if it looked

dry, she wanted me to reach out and jiggle it to make sure.  The lady was just

overcome with fear about those sorts of things."  *Id.* at 14.  Given this evidence,

the court cannot say that the fact that the PATTI TOO sank in its slip establishes

its unseaworthiness as a matter of law.

Regarding the second issue, the court rejects Plaintiff's argument that

the PATTI TOO was unseaworthy as a matter of law due to the disconnection of

the thru-hull fitting.  Such interpretation would render meaningless other more

specific portions of the Policy.  *See Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*,

74 Haw. 85, 110, 839 P.2d 10, 25 (1992) ("Where the language of a contract is

susceptible of two constructions, one of which makes it fair, customary and such

as prudent men would naturally execute, while the other makes it inequitable,

unusual, or such as reasonable men would not likely enter into, the interpretation

which makes a fair, rational and probable contract must be preferred.") (citation

and quotation signals omitted); *see also* Restatement (Second) Of Contracts

§ 203(a) (1981) ("[A]n interpretation which gives a reasonable, lawful, and

effective meaning to all the terms is preferred to an interpretation which leaves a

part unreasonable, unlawful, or of no effect.").  As discussed above, whether the

thru-hull fitting disconnected due to deterioration or a latent defect is a question of

fact.  The Policy, however, specifically covers losses caused by a latent defect.

*See*  Pl.'s Ex. D (stating under "Losses We Do Not Cover" "a latent or physical

defect.  This exclusion applies only to the item having the latent or physical

defect.").  To give both the Seaworthiness Warranty and the latent defect clause

meaning, losses caused by a latent defect -- regardless of whether they cause the

boat to become "unseaworthy" -- are covered by the Policy.  To find otherwise

would lead to the absurd result that the Seaworthiness Warranty would preclude

coverage for *any* unintentional sinking.  The very act of sinking would make a

boat "unseaworthy" and preclude any coverage whatsoever.[6]  Accordingly, to the

---

[6] For this reason, the court further finds the various deposition testimony that the PATTI TOO was unseaworthy at the time it sank not probative on this issue.

extent the PATTI TOO sank due to a latent defect in the thru-hull fitting, the

Seaworthiness Warranty will not preclude recovery under the Policy.

As to the third issue, whether the PATTI TOO was unseaworthy

because it was equipped with unapproved plastic engine exhaust fittings is

similarly a question of fact.  While Plaintiff has provided evidence that the PATTI

TOO included these plastic exhaust fittings, it has presented no evidence that these

fittings placed the PATTI TOO in an "unsafe and unnavigable condition" in

breach of the Seaworthiness Warranty.  Indeed, Defendants have presented

evidence that these exhaust fittings did not render the PATTI TOO unseaworthy.

*See* Scelsa Aff. ¶ 9.  For these reasons, Plaintiff's Motion for Summary Judgment

that the PATTI TOO was unseaworthy, and Defendants' Motion for Summary

Judgment that the PATTI TOO was seaworthy, are DENIED.

**B.    "Wear and Tear" Clause**

Defendants argue that Plaintiff has failed to set forth admissible facts

which would support its allegation that the PATTI TOO sank due to "wear and

tear; marring; scratching; gradual deterioration; inherent vice; rust; corrosion;

mold; wet or dry rot," which is excluded from the Policy.  Because Plaintiff has

submitted evidence that the PATTI TOO may have sank due to deterioration of the

thru-hull fitting as discussed above, the court DENIES Defendants' Motion for Summary Judgment on the "wear and tear" clause.

## C.   Defendants' Counterclaims

### 1.   *Unfair Business Practices*

Plaintiff argues that summary judgment should be granted on Defendants' counterclaim of unfair business practice because Plaintiff's conduct was not unfair within the meaning of HRS § 480-2.  The court agrees.

Pursuant to HRS § 480-2(a), "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."[7]  HRS Chapter 480 does not define what constitutes "unfair methods of competition and unfair or deceptive acts or practices."  However, Hawaii courts have defined "unfair practice" as a practice that "offends established public policy and . . . is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Hawaii Cmty. Fed. Credit Union v. Keka*, 94 Haw. 213, 228, 11 P.3d 1, 16 (2000) (*quoting Rosa v. Johnston*, 3 Haw. 420, 427, 651 P.2d 1228, 1234 (1982).

---

[7]  During the hearing, Defendants represented that based on the discovery that they have received to date, they allege a violation of HRS § 480-2 based on unfair, as opposed to deceptive, business practices.

22

Defendants have presented no evidence creating a fact question that Plaintiff violated HRS § 480-2.  The only information Plaintiff had at the time it filed its Complaint was that the PATTI TOO sank from an uncovered loss, i.e., deterioration.  *See* Defs.' Ex. A.[8]  Further, as discussed above, the court agrees with Plaintiff's interpretation of the Seaworthiness Warranty that if the PATTI TOO was not kept in a safe and navigable condition, then Defendants may be denied coverage even if the unseaworthy condition did not cause the loss.  Accordingly, the court rejects Defendants' argument that they have alleged a cognizable claim of unfair business practices due to Plaintiff's interpretation of the Policy.

Finally, Defendants' attempt to create a fact issue by pointing to Plaintiff's litigation tactics and strategies in this action is without merit.  Plaintiff's current litigation position -- that the PATTI TOO loss is not covered by the Policy due to the deterioration of the thru-hull fitting -- is fully consistent with its position when it declined to pay for the PATTI TOO's loss.  That Plaintiff makes arguments not accepted by the court or fails to present Smith as an expert is not dispositive; instead, the hallmark of a § 480-2 claim is an unfair practice.

---

[8] Defendants admit that the Scelsa Affidavit and Anderson Declaration were not made available to Plaintiff until after the instant litigation commenced.

23

Defendants have failed to oppose Plaintiff's Motion for Summary Judgment with evidence showing that Plaintiff engaged in unfair practices.  Summary judgment is GRANTED on this claim.

### 2.   *Bad Faith*

Plaintiff argues that summary judgment should be granted on Defendants' counterclaim of bad faith because Plaintiff's decision to deny coverage and bring this action was based on a reasonable interpretation of the Policy.  The court agrees.

Hawaii "recognizes a bad faith cause of action in the first-party insurance context."  *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 127, 920 P.2d 334, 341 (1996).  In *Best Place, Inc.*, the Hawaii Supreme Court discussed case law, statutory provisions, and legislative history to find that "there is a legal duty, implied in a first- and third- party insurance contract, that the insurer must act in good faith in dealing with its insured, and a breach of that duty of good faith gives rise to an independent tort cause of action." *Id.* at 132, 920 P.2d at 347.  As explained in *Best Place, Inc.*, to prove bad faith:

> [T]he insured need not show a conscious awareness of wrongdoing or unjustifiable conduct, nor an evil motive or intent to harm the insured.  An unreasonable delay in payment of benefits will warrant recovery for compensatory

damages . . . .  However, conduct based on an interpretation of
the insurance contract that is reasonable does not constitute bad
faith.  In addition, an erroneous decision not a pay a claim for
benefits due under a policy does not by itself justify an award
of compensatory damages.  Rather, the decision not to pay a
claim must be in "bad faith."

*Id.* at 133.  (citations omitted).  "While questions of the 'reasonableness' of a

party's action are usually inappropriate for adjudication on summary judgment, a

'trial court is "under a duty" to decide this question as a matter of law where the

facts are undisputed or are susceptible of only one reasonable interpretation.'"

*Apana v. TIG Ins. Co.*, 504 F. Supp. 2d 998, 1007 (D. Haw. 2007) (*quoting Wittig*

*v. Allianz*, 112 Haw. 195, 200, 145 P.3d 738, 743 (2006)); *see also Gov't*

*Employees Ins. Co. v. Dizol*, 176 F. Supp. 2d 1005, 1035 (D. Haw. 2001) (granting

an insurance company's motion for summary judgment after finding that the

insurance company acted reasonably and did not act in bad faith when denying

coverage).

        The court finds as a matter of law that Plaintiff did not engage in bad

faith in handling Defendants' claim.  The evidence presented shows that Plaintiff

believed that the loss of the PATTI TOO was due to deterioration, or was

otherwise not covered due to an interpretation of the Seaworthiness Warranty.  *See*

Defs.' Ex. A.  Given this information, Plaintiff filed this action to determine the

parties' rights under the Policy.  Plaintiff's interpretation of the Policy denying

coverage was reasonable, and thus does not support a finding of bad faith.  *See*

*Best Place*, 82 Haw. at 133, 920 P.2d at 347 ("[C]onduct based on an

interpretation of the insurance contract that is reasonable does not constitute bad

faith."); *Colonial Penn Ins. Co. v. First Ins. Co. of Haw., Ltd.*, 71 Haw. 42, 780

P.2d 1112, 1114 (1989) (holding that there was no bad faith denial of benefits

where the insurer denies payment of benefits based on an unsettled question of

law).

       Defendants' evidence that the PATTI TOO may have sunk due to

*other reasons* is not evidence of bad faith (indeed, such evidence did not exist

when Plaintiff made its decision) and only establishes an open fact question of

causation.  Further, articles produced by Defendants providing anecdotal evidence

of a general policy of denying claims (Exs. A, B, H to Defs.' Opp'n to Pl.'s Mot.

Summ. J. on Counterclaim) are insufficient as a matter of law to establish a

genuine issue that *in this action* Allstate acted in bad faith.  *See Matsushita Elec.*

*Indus. Co.*, 475 U.S. at 587 (finding that where a moving party has carried its

burden under Rule 56(c), the nonmoving party must "come forward with specific

facts showing that there is a genuine issue for trial" ).

26

Finally, the court rejects Defendants' argument that summary

judgment should be denied because discovery will show a "general company

strategy of delay of settling claims which, along with evidence of specific acts of

bad faith already produced in the instant matter by Defendants, will provide

compelling proof of Defendants' allegation of bad faith . . . ."  Defs.' Opp'n to

Pl.'s Mot. Summ. J. on Counterclaim at 5-6.  Pursuant to Federal Rule of Civil

Procedure 56 (f):

> If a party opposing the motions shows by affidavit that, for
> specified reasons, it cannot present facts essential to justify its
> opposition, the court may:
>     (1) deny the motion;
>     (2) order a continuance to enable affidavit to be
>     obtained, depositions to be taken, or other discovery to
>     be undertaken; or
>     (3) issue any other just order.[9]

---

[9]  Rule 56(f), as quoted, became effective December 1, 2007 and "shall govern in all proceedings thereafter commenced and, insofar as just and practicable, all proceedings then pending."  *See* April 30, 2007 Order of the Supreme Court of the United States Amending Rules; *see also* Fed. R. Civ. P. 86 (stating that the "rules and amendments take effect at the time specified by the Supreme Court, subject to 28 U.S.C. § 2074" and govern pending proceedings unless "the Supreme Court specifies otherwise," or "the court determines that applying them in a particular action would be infeasible and work and injustice").  "The language of Rule 56 has been amended as part of the general restyling of the Civil Rules to make them more easily understood and to make style and terminology consistent throughout the rules.  These changes are intended to be stylistic only."  Rule 56 Advisory Committee Notes, 2007 Amendments.  Because the amended version of Rule 56(f) governs, and no substantive change in the law was intended, the court interprets the new rule by applying precedent related to prior version of Rule 56(f).  *See United States v. Wilson*, 429 F.3d 455, 458 n.2 (3d Cir. 2005) (noting that amendment moving Fed. R. Crim. P. 32 into Fed. R. Crim. P. 11(d) did not substantively change the rule such that "precedent referring to Rule 32 continues to be authoritative").

"A party requesting a continuance pursuant to Rule 56(f) must identify by affidavit the specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum v. City & County of S.F.*, 441 F.3d 1090, 1100 (9th Cir. 2006). "Failure to comply with the requirements of Rule 56(f) is a proper ground for denying discovery and proceeding to summary judgment." *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986). Defendants' generalized statements regarding the discovery that they may receive fall short. Indeed, Defendants submitted no affidavit and otherwise failed to identify "specific facts that further discovery would reveal, and explain why those facts would preclude summary judgment." *Tatum*, 441 F.3d at 1100. Accordingly, summary judgment on this claim is GRANTED.

## V.  <u>CONCLUSION</u>

Based on the foregoing, the court DENIES Plaintiff's Motion for Partial Summary Judgment on its Complaint, DENIES Defendants' Motion for Summary Judgment on Counts I and II of Plaintiff's Complaint, and GRANTS Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims.

///

///

///

Plaintiff's causes of action in its Complaint remain.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 6, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Allstate Insurance Co. v. Heil et al.*, Civ. No.  07-00097 JMS/BMK; Order (1) Denying Plaintiff's Motion for Partial Summary Judgment on its Complaint; (2) Denying Defendants' Motion for Partial Summary Judgment on Counts I and II of Plaintiff's Complaint; and (3) Granting Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims