IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ALLSTATE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>GEORGE HEIL; PATRICIA NAIYOKE,<br><br>Defendants.<br>_______________<br><br>GEORGE HEIL and PATRICIA NAIYOKE,<br><br>Counterclaim Plaintiffs,<br><br>vs.<br><br>ALLSTATE INSURANCE COMPANY,<br><br>Counterclaim Defendant.<br>_______________ | ) | CIVIL NO. 07-00097 JMS/BMK<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COMPLAINT; (2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I AND II OF PLAINTIFF'S COMPLAINT; AND (3) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF ORDER (1) DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON ITS COMPLAINT; (2) DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTS I AND II OF PLAINTIFF'S COMPLAINT; AND (3) GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON DEFENDANTS' COUNTERCLAIMS**

## I. INTRODUCTION

Before the court is Plaintiff Allstate Insurance Company's ("Allstate" or "Plaintiff") Motion for Partial Reconsideration of the court's December 6, 2007 Order (1) Denying Plaintiff's Motion for Partial Summary Judgment on its Complaint; (2) Denying Defendants' Motion for Partial Summary Judgment on Counts I and II of Plaintiff's Complaint; and (3) Granting Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims ("Motion for Reconsideration"). Pursuant to Local Rule ("L.R.") 7.2(d), this motion can be decided without oral argument. After careful consideration of the issues raised, the court DENIES Plaintiff's Motion for Reconsideration.

## II. BACKGROUND

This dispute centers on the rights and obligations of the parties under an insurance policy (the "Policy"), stemming from the loss of Defendants' boat the PATTI TOO. Because Plaintiff's Motion for Reconsideration focuses on the

court's interpretation of the Policy, the court briefly outlines its relevant provisions.[1]

At the time the PATTI TOO sank, Defendants had the Policy with Plaintiff covering the PATTI TOO for losses up to $56,000 for the boat, $5,600 for boat equipment, and $5,000 for personal effects. Pl.'s Ex. D at Boatowners Policy Declarations 2.[2] Under the section entitled "SECTION I –COVERAGE TT[;] Your Property," the Policy provides the following coverage:

> We will pay for physical loss to the property described in Coverage TT, except as limited or excluded in this policy.

*Id.* at Allstate Boatowners Policy 4. Under the heading entitled "Losses We Do Not Cover," the Policy lists several specific exclusions to coverage:

> We do not cover loss to the property described in Coverage TT resulting in any manner from:
>
> 1. wear and tear; marring; scratching; gradual deterioration; inherent vice; rust; corrosion; mold; wet or dry rot.

---

[1] The remaining facts underlying this action have been adequately set forth in the court's December 6, 2007 Order (1) Denying Plaintiff's Motion for Partial Summary Judgment on its Complaint; (2) Denying Defendants' Motion for Partial Summary Judgment on Counts I and II of Plaintiff's Complaint; and (3) Granting Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims ("December 6, 2007 Order") and need not be recounted here.

[2] All references to exhibits and declarations refer to those filed in support of or opposition to Plaintiff's Motion for Partial Summary Judgment on the Complaint.

2. a latent or physical defect. This exclusion applies only to the item having the latent or physical defect.

*Id.*

Finally, under "Section I Conditions," the Policy includes a "Seaworthiness Warranty," which states:

3. Seaworthiness Warranty
You warrant that your watercraft will be kept in a safe and navigable condition whenever afloat and/or being operated.

*Id.* at Allstate Boatowners Policy 6.

## III. STANDARD OF REVIEW

A "motion for reconsideration must accomplish two goals. First, a motion for reconsideration must demonstrate reasons why the court should reconsider its prior decision. Second, a motion for reconsideration must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." *Donaldson v. Liberty Mut. Ins. Co.*, 947 F. Supp. 429, 430 (D. Haw. 1996); *Na Mamo O 'Aha 'Ino v. Galiher*, 60 F. Supp. 2d 1058, 1059 (D. Haw. 1999).

Courts have established only three grounds justifying reconsideration: (1) an intervening change in controlling law; (2) the discovery of new evidence

not previously available; and (3) the need to correct clear or manifest error in law or fact in order to prevent manifest injustice. *Mustafa v. Clark County Sch. Dist.*, 157 F.3d 1169, 1178-79 (9th Cir. 1998); *Great Hawaiian Fin. Corp. v. Aiu*, 116 F.R.D. 612, 616 (D. Haw. 1987), *rev'd on other grounds*, 863 F.2d 617 (9th Cir. 1988); *see also* L.R. 60.1 (providing that reconsideration is only permitted where there is "(a) Discovery of new material facts not previously available; (b) Intervening change in law; [or] (c) Manifest error of law or fact.").

## IV. DISCUSSION

The December 6, 2007 Order explained its construction of the Policy's latent defect exclusion with the Seaworthiness Warranty as follows:

> [T]he court rejects Plaintiff's argument that the PATTI TOO was unseaworthy as a matter of law due to the disconnection of the thru-hull fitting. Such interpretation would render meaningless other more specific portions of the Policy. . . . As discussed above, whether the thru-hull fitting disconnected due to deterioration or a latent defect is a question of fact. The Policy, however, specifically covers losses caused by a latent defect. *See* Pl.'s Ex. D (stating under "Losses We Do Not Cover" "a latent or physical defect. This exclusion applies only to the item having the latent or physical defect."). To give both the Seaworthiness Warranty and the latent defect clause meaning, losses caused by a latent defect -- regardless of whether they cause the boat to become "unseaworthy" -- are covered by the Policy. To find otherwise would lead to the absurd result that the Seaworthiness Warranty would preclude coverage for *any* unintentional sinking. The very act of sinking would make a boat "unseaworthy" and preclude any coverage

> whatsoever. Accordingly, to the extent the PATTI TOO sank due to a latent defect in the thru-hull fitting, the Seaworthiness Warranty will not preclude recovery under the Policy.

December 6, 2007 Order (some citations omitted).

Plaintiff argues that this interpretation is a manifest error of law because it (1) generates coverage from an exclusion from coverage, (2) subordinates the "wear and tear" exclusion to the "latent defect" exclusion, and (3) subordinates the Seaworthiness Warranty to the "latent defect" exclusion. The court addresses each of these arguments.

First, the court's interpretation that the Policy "specifically covers losses caused by a latent defect" was not clearly erroneous. *Stanford Ranch, Inc. v. Maryland Casualty Co.*, 89 F.3d 618, 627 (9th Cir. 1996), a case cited by Plaintiff, describes how to construe an insurance policy containing exclusions:[3]

> In interpreting an insurance contract, this court must first look to the insuring agreement and determine whether coverage exists. If coverage exists, then this court must look to the contract exclusions to see if coverage is otherwise excluded. If coverage does not exist under the insuring agreement, the inquiry is at an end. There is no need to look to the exclusions because they cannot expand the basic coverage granted in the insuring agreement.

---

[3] While *Stanford Ranch, Inc. v. Maryland Casualty Co.*, 89 F.3d 618, 627 (9th Cir. 1996), interpreted an insurance policy under California law, the court nonetheless finds this guidance instructive here.

Applied here, the Policy broadly covers "physical loss to the property described in Coverage TT, except as limited or excluded in this policy." Pl.'s Ex. D at Allstate Boatowners Policy 4. Accordingly, any loss to the PATTI TOO should be covered by the Policy, unless an exclusion specifically states otherwise. The Policy's "latent defect" exclusion "applies *only* to the item having the latent or physical defect." *Id.* (emphasis added). Therefore, while the "item having the latent defect" is excluded from coverage, losses that the latent defect causes to *other* items are not excluded.[4]

This interpretation neither broadens coverage nor violates the rule that "exclusion clauses *subtract* from coverage rather than grant it." *Sturla, Inc. v. Fireman's Fund Ins. Co.*, 67 Haw. 203, 210, 684 P.2d 960, 965 (1984) (citation and quotation omitted). Rather, this interpretation reads the "latent defect" exclusion together with the Policy's general coverage provision. *See Britt v. U.S. Auto Ass'n*, 86 Haw. 511, 516, 950 P.2d 695, 700 (1998) ("Insurance policies, because they are contracts of adhesion, must be construed liberally in favor of coverage, and therefore coverage exists unless exclusions clearly provide otherwise."); *see also Retherford v. Kama*, 52 Haw. 91, 96, 470 P.2d 517, 520

[4] The December 6, 2007 Order's statement that the Policy "specifically covers losses caused by a latent defect" did not create coverage from the latent defect exclusion, but recognized that losses that the latent defect causes to *other* items are covered by the Policy.

(1970) ("To say the least, we are of the opinion that the Coverage B with its exclusion and exception to the exclusion is ambiguously phrased. We hold Consolidated responsible for the ambiguity and resolve the question of coverage herein in favor of Sea Life."); *Nat'l Union Fire Ins. Co. v. Lynette C.*, 279 Cal. Rptr. 394, 396, 399 (Cal. App. 1991) (noting that "exclusion provisions are construed strictly against the insurer" and that "although it is easy to say that an exclusion cannot act to broaden coverage . . . it is just as easy to say that an *exception* to an exclusion can act to broaden coverage" (citations omitted)).

Second, the court's interpretation did not improperly subordinate the "wear and tear" exclusion to the "latent defect" exclusion. Rather, the December 6, 2007 Order recognized that "whether the thru-hull fitting disconnected due to deterioration *or* a latent defect is a question of fact." (emphasis added). On reconsideration, Plaintiff raises separate issues: whether "wear and tear" can cause a "latent defect" that the Policy must cover, and whether the "latent defect" exclusion can be understood as limiting the "wear and tear" exclusion. *See* Mot. Recons. 7-8. The parties did not raise these issues in their summary judgment briefings; as such, construction of these two terms together was not necessary for a

summary judgment determination.[5] In any event, the court's December 6, 2007 Order did not find that the latent defect exclusion limited or modified the wear and tear exclusion. Accordingly, the court committed no error by not addressing these issues.

Third, the court's interpretation did not improperly subordinate the Seaworthiness Warranty to the "latent defect" exclusion. To accept Plaintiff's argument that the Seaworthiness Warranty overrides all coverage under the Policy would conflict with the reasonable expectations of Defendants that Plaintiff "will pay for physical loss to the property . . . except as limited or excluded in this policy." *See Dairy Rd. Partners v. Island Ins. Co.*, 92 Haw. 398, 412, 992 P.2d 93, 107 (2000) ("[T]he rule is that policies are to be construed in accord with the reasonable expectations of a layperson." (internal citations, quotation marks, brackets, and ellipses omitted)); *Armed Forces Ins. Exch. v. Transamerica Ins. Co.*, 88 Haw. 373, 385, 966 P.2d 1099, 1111 (Haw. App. 1998) ("[I]n construing the terms of insurance contracts, we honor the objectively reasonable expectations of policyholders and intended beneficiaries."). As explained in the December 6,

---

[5] In support of their position on the Motions for Summary Judgment, Defendants submitted the expert testimony of Robert Anderson asserting that "a latent defect and/or catastrophic shock are the likely causes of the fracturing present in the remainder of the PVC fitting," Anderson Decl. ¶ 7, and that the PVC fitting did not fail due to age and exposure. *Id.* ¶ 5. Anderson's declaration supports a finding that if the thru-hull fitting caused the sinking, the PVC fitting failed due to a latent defect and/or catastrophic shock, not wear and tear.

2007 Order, accepting Plaintiff's argument "would lead to the absurd result that the Seaworthiness Warranty would preclude coverage for *any* unintentional sinking. The very act of sinking would make a boat 'unseaworthy' and preclude any coverage whatsoever." Such construction is wholly unreasonable.[6] *See Masaki v. Columbia Cas. Co.*, 48 Haw. 136, 142, 395 P.2d 927, 930 (1964) ("[P]olicies of insurance are to be given a reasonable construction, and not one that leads to an absurd result.").

Further, Plaintiff's reliance on *The Caledonia*, 157 U.S. 124 (1895), is unavailing. As even Plaintiff recognizes in its Motion for Reconsideration, *The Caledonia* addressed "the interaction of the implied warranty of seaworthiness and latent defects in the context of the vessel owner's implied warranties to the owner of goods being shipped." Pl.'s Mot. Recons. 9. It provides little guidance to how the Policy's Seaworthiness Warranty, in a consumer insurance contract covering a

---

[6] The court's construction of the Policy should not be interpreted as reading the Seaworthiness Warranty out of the Policy or finding that the Seaworthiness Warranty cannot be interpreted consistent with the other provisions. As noted in the December 6, 2007 Order, a fact issue exists as to whether Defendants breached the Seaworthiness Warranty by having the PATTI TOO equipped with unapproved plastic engine exhaust fittings. The December 6, 2007 Order merely rejected Plaintiff's interpretation of the Seaworthiness Warranty to supercede all other coverage. Such construction not only comports with the reasonable expectations of the insured, but also resolves any ambiguity as to the application of the Seaworthiness Warranty against Plaintiff. *Del Monte Fresh Produce (Hawaii), Inc. v. Fireman's Fund Ins. Co.*, --- P.3d ---, 2007 WL 4533151, at * 4 (Haw. Dec. 26, 2007) ("[W]e have long subscribed to the principle that [insurance policies] must be construed liberally in favor of the insured and any ambiguities must be resolved against the insurer. Put another way, the rule is that policies are to be construed in accord with the reasonable expectations of a layperson.").

recreational boat, should be read under Hawaii state law in light of the facts presented. Accordingly, Plaintiff fails to establish that the December 6, 2007 Order was based on a manifest error in law.

## V. CONCLUSION

Based on the foregoing, the court DENIES Plaintiff's Motion for Partial Reconsideration.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 4, 2008.




/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Allstate Insurance Co. v. Heil et al.*, Civ. No. 07-00097 JMS/BMK; Order Denying Plaintiff's Motion for Partial Reconsideration of Order (1) Denying Plaintiff's Motion for Partial Summary Judgment on its Complaint; (2) Denying Defendants' Motion for Partial Summary Judgment on Counts I and II of Plaintiff's Complaint; and (3) Granting Plaintiff's Motion for Partial Summary Judgment on Defendants' Counterclaims